

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2008

# Sun v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sun v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1525.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1525

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3774
_____

JIN EN SUN
a/k/a Jinen Sun

Jin En Sun,
Petitioner
v.
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A97-669-505)
Immigration Judge:  Honorable Daniel Meisner

Submitted Under Third Circuit LAR 34.1(a)
January 28, 2008

Before:  SCIRICA, <u>Chief</u> <u>Judge</u> and  RENDELL, <u>Circuit</u> <u>Judges</u>.
and RODRIGUEZ, *<u>District</u> <u>Judge</u>.

(Filed: February 26, 2008)

OPINION OF THE COURT

    * Honorable Joseph H. Rodriguez, Senior Judge of the United States District Court for the District of New Jersey, sitting by designation.

RENDELL, Circuit Judge.

Jin En Sun, a twenty-six year old Chinese citizen, petitions for review of a final order of the Board of Immigration Appeals ("BIA"), in which the BIA adopted and affirmed the denial by the Immigration Judge ("IJ") of Sun's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Before the IJ, Sun claimed that he practices Falun Gong and that, on account of his practice, he was detained, beaten, and interrogated by the Chinese police for two months. According to Sun's testimony, he was only released from detention after he signed a document promising to cease his Falun Gong activities, and he is now wanted by the Chinese police because he subsequently violated this promise. The IJ denied Sun's applications because he did not find Sun's testimony to be credible. We will deny Sun's petition for review because substantial evidence supports this adverse credibility determination.

To be eligible for asylum, an applicant must demonstrate that he is a refugee. *See* 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A). A refugee is "a person unable or unwilling to return to the country of that person's nationality or habitual residence because of past persecution or because of a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Gao v. Ashcroft*, 299 F.3d 266, 271-72; *see* 8 U.S.C. § 1101(a)(42)(A). A rebuttable presumption of a well-founded fear of future persecution arises if an applicant establishes

that he suffered past persecution.  *See* 8 C.F.R. § 208.13(b)(1).  Applicants "have the burden of supporting their asylum claims through credible testimony."  *Gao*, 299 F.3d at 272.

We have jurisdiction to review the BIA's final order pursuant to 8 U.S.C. § 1252(a).  Since the BIA adopted and affirmed the decision of the IJ, we review the decision of the IJ.  *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005).  As we do with other findings of fact, we review an IJ's adverse credibility determination for substantial evidence.  *Gao*, 299 F.3d at 272.  Therefore, we must uphold an IJ's adverse credibility determination "unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Id.* at 272 (quoting 8 U.S.C. § 1252(b)(4)(B)).  Despite this highly deferential standard, "[a]dverse credibility determinations based on speculation or conjecture . . . are reversible."  *Id.*  Moreover, we have explained that "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding"; rather, discrepancies in an applicant's testimony must involve the "heart of the asylum claim."  *Id.* at 272 (internal quotation marks omitted).

Sun argues on appeal that the IJ's adverse credibility determination was not supported by substantial evidence.  We disagree.  The IJ based his determination on numerous inconsistencies between Sun's testimony at the merits hearing and his previous statements that went to the heart of his asylum claim.

3

First, Sun stated during his asylum officer interview that he passed out Falun Gong flyers in "secret" locations (A.R. 158); however, he testified at his merits hearing that he distributed flyers "where there were more people around," such as on the street and at transport stations (A.R. 64).

Second, Sun stated in detail during his asylum officer interview that he believed he was arrested because the jealous boyfriend of a woman he had been seeing had reported him to the police; however, he failed to mention this theory at all during his merits hearing.

Third, Sun stated during his asylum officer interview that the Chinese authorities released him because his family paid a bribe, but he never mentioned the bribe at the merits hearing. Instead, Sun explained in his application for asylum and at his merits hearing that he was released because he signed a promise to stop practicing Falun Gong. Sun also testified at his merits hearing that he was released because the government did not have enough evidence against him.

Fourth, Sun stated in his asylum officer interview that *after* his release from detention, he distributed Falun Gong flyers; however, at his merits hearing, Sun testified that because he feared what would happen if the government caught him, he did nothing related to Falun Gong after his detention except for practicing Falun Gong exercises late at night at his parents' home.[1]

_____

[1] The IJ also emphasized the fact that Sun provided drastically different descriptions of

(continued...)

Given these inconsistencies, we hold that the IJ's credibility determination is supported by substantial evidence, and we will not disturb the denial of asylum. Since Sun failed to demonstrate his eligibility for asylum, he also "necessarily fail[ed] to meet the standard for withholding of removal," which is more stringent. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

For the above reasons, we will **DENY** Sun's petition for review.[2]

_____

[1](...continued)
his travel path to the United States. For example, in his I-589, Sun stated that he traveled through several African countries before boarding a plane for Miami. In contrast, Sun testified during his merits hearing that he had traveled non-stop from Singapore to Miami. Since the inconsistencies previously discussed are sufficient on their own to support the IJ's adverse credibility determination, we need not address whether an applicant's telling of inconsistent stories regarding his travel path to the United States goes to the heart of his asylum claim.

[2] Since the IJ's adverse credibility determination is a sufficient independent basis for denying Sun's applications for relief, we need not address Sun's argument that he should have been granted a greater opportunity to provide corroborating evidence. Furthermore, in his brief, Sun does not address the IJ's denial of his application for relief under the CAT, so neither will we.